Matter of Dunkez Private Home Care, Inc. v McDonald (2025 NY Slip Op 06107)

Matter of Dunkez Private Home Care, Inc. v McDonald

2025 NY Slip Op 06107

Decided on November 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 6, 2025

CV-24-0907
[*1]In the Matter of Dunkez Private Home Care, Inc., Petitioner,
v
James . McDonald, as Commissioner of Health, et al., Respondents.

Calendar Date:September 5, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Lynch, Fisher and Mackey, JJ.

Rivkin Radler LLP, Uniondale (Merril S. Biscone of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondents.

Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health, among other things, revoking petitioner's license to operate as a home care services agency.
Petitioner is a licensed home care services agency (hereinafter LHCSA) located in Westchester County. LHCSAs are licensed by respondent Department of Health (hereinafter DOH) and are engaged in arranging or providing nursing services, home health aide services and other therapeutic and related services, which may be of a preventative, therapeutic, rehabilitative, health guidance and/or supportive nature to persons at home (see Public Health Law § 3602 [2]). As relevant here, petitioner provided home health aide and personal care aide services, which include, among other things, simple health care tasks, personal hygiene services and housekeeping tasks essential to a patient's health (see Public Health Law § 3602 [4], [5]). The law directs that these services shall be prescribed by a physician or nurse practitioner in accordance with a plan of care, under the supervision of a registered professional nurse from a certified home health agency such as a residential health care facility, hospital or LHCSA (see Public Health Law § 3602 [2], [4]). In December 2017, petitioner entered into a contract with CenterLight Healthcare, Inc., a managed care organization.[FN1] All of petitioner's patients between the years 2019 through 2021 were referred to petitioner by CenterLight.
To ensure compliance by LHCSAs with DOH's regulatory scheme, DOH employs surveyors to perform unannounced site visits to inspect registry, patient and personnel records maintained by the LHCSA. These inspections are referred to as surveys. In October 2019, DOH performed a survey of petitioner, found numerous deficiencies and cited petitioner for same. In January 2021, DOH conducted a second survey to ensure that petitioner had corrected the cited deficiencies and discovered it had not. In March 2021, DOH received and investigated a patient complaint, and found the complaint substantiated. As a result of the foregoing, in April 2021, petitioner's license was temporarily suspended for a period of 30 days. Notwithstanding this suspension, petitioner continued to operate its LHCSA. In January 2022, DOH served petitioner with a notice of hearing and an amended statement of charges consisting of 36 deficiencies and seeking revocation of petitioner's license (see Public Health Law § 3605-a [2]; 10 NYCRR 765-2.3 [c]).[FN2] Petitioner requested and was granted an administrative hearing, after which the Administrative Law Judge issued a determination sustaining all 36 charges, recommending revocation of petitioner's license and the imposition of a monetary penalty. Respondent Commissioner of Health adopted the Administrative Law Judge's findings and recommendations — with one exception, not relevant here — as part of his order[*2]. Petitioner thereafter commenced this CPLR article 78 proceeding against respondents seeking to annul the Commissioner's determination asserting that it lacked substantial evidence, and Supreme Court transferred the proceeding to this Court.
Judicial review of a determination made by an administrative agency, as a result of an evidentiary hearing, is limited to consideration of whether the findings were supported by substantial evidence (see CPLR 7803 [4]; Matter of Wegman v New York State Dept. of Health, 229 AD3d 862, 863 [3d Dept 2024]). "Substantial evidence consists of such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of P.C. v Stony Brook Univ., 43 NY3d 574, 580 [2025] [internal quotation marks and citation omitted]). "[T]he substantial evidence standard is a minimal standard. It is less than a preponderance of the evidence, and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks and citations omitted]). "Stated otherwise, we review the administrative determination to see if it is supported by proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (Matter of P.C. v Stony Brook Univ., 43 NY3d at 581[internal quotation marks and citation omitted]).
Initially, we reject respondents' argument that petitioner's brief should be rejected for failing to provide "a concise statement of the nature of the case and of the facts which should be known to determine the questions involved" (CPLR 5528 [a] [3]). Here, the record on appeal contains the verified petition, transcripts of the administrative hearings, and exhibits; thus, it is sufficient to permit review of the merits (see Merritt v Wynder, 212 AD3d 607, 608 [2d Dept 2023]; cf. Matter of Dixon v Rich, 200 AD3d 1378, 1379 [3d Dept 2021]).
Turning to the merits, DOH proffered the testimony of a licensed social worker surveyor, two registered nurse surveyors, the regional program manager of DOH's home and community-based services programs and submitted 86 exhibits into evidence.[FN3] The social worker surveyor stated that he conducted the 2019 and January 2021 surveys of petitioner's LHCSA. DOH's first registered nurse surveyor explained that surveys are conducted by two surveyors, one of whom is a nurse who typically reviews patients' records and aides' certifications, and that she participated in the January 2021 survey. The second registered nurse surveyor testified that she surveyed petitioner's LHCSA in March 2021 in response to a patient complaint, which she subsequently sustained. The DOH regional program manager testified that he coordinates and oversees surveillance activities and [*3]that he was the second-level supervisor of the nurse who conducted the 2019 survey and therefore is familiar with her notes and other documentation.[FN4] The program manager also testified that, due to the substantiated deficiencies against petitioner, DOH undertook enforcement action via a 30-day suspension — meaning the LHCSA was to discharge its patients to another organization and was prohibited from providing any patient services during the suspension period. He stated that DOH subsequently learned that, despite the suspension, petitioner continued to provide services to patients. The registered nurse surveyors described the procedure involved in licensing and relicensing LHCSAs, which includes making an unannounced visit to the LHCSA's facility, meeting with the operator or individual in charge of the LHCSA, and selecting a sample of clinical patient records and personnel records to determine if there are any deficiencies by the LHCSA in complying with DOH's statutes and regulations. After compiling the information, the surveyor informs the LHCSA of any deficiencies, issues a citation if necessary, and provides suggestions for corrective action. The social worker surveyor testified that this procedure was implemented in both the 2019 and January 2021 surveys. Cumulatively, the witnesses provided detailed accounts of all 36 charges, including, but not limited to, that there was no evidence that petitioner possessed patient discharge records or evidence that petitioner's nurse notified patients' doctors prior to discharge, no documentation regarding the clinical assessment of patients, no evidence of medical orders or that the aides were being properly supervised and oriented as to plans of care, nor any evidence of progress reports or that the patients were advised of the patient's bill of rights or complaint procedures. Additionally, the social worker surveyor stated that petitioner had a minimal policy regarding its database, which lacked numerous DOH regulatory requirements, including entries containing employees who were no longer employed by petitioner, entries that failed to include appropriate criminal history checks of its aides and entries that were not timely updated (see 10 NYCRR 403.5). He further relayed that, despite multiple attempts, he was unable to physically meet with or have telephone contact with petitioner's registered nurse during the surveys, which indicated to him that petitioner did not have in its employ a registered nurse qualified to work at the time of the surveys. Finally, he relayed that petitioner's operator did not provide all requested records and that many of the records that were produced were out of date.
Petitioner offered the testimony of its president and vice president who operate the LHCSA, a relative of one of petitioner's patients and two aides who were, at the time of the hearing, employed by petitioner. None of the witnesses' testimony contradicted the charge that petitioner failed to comply with the [*4]suspension order. In fact, their testimony confirmed that petitioner continued to send aides to perform patient care services throughout the operative period. Likewise, petitioner's president's and vice president's testimony did not contradict the evidence presented by DOH. Instead, the operators attempted to excuse their noncompliance by arguing that petitioner delegated its duties to CenterLight as part of its contract with said organization. This is unpersuasive. Although an LHCSA may enter into a contract with another organization, the contract does not diminish the LHCSA's responsibility to ensure compliance with all pertinent provisions of federal, state and local statutes, rules and regulations, to ensure the quality of all services provided and to ensure adherence by staff to the plan of care established for its patients (see 10 NYCRR 766.10). Based upon the foregoing and our review of the record, we are satisfied that the surveyors' testimony regarding the charges — which were corroborated by the exhibits, coupled with petitioner's witnesses' admissions — provided the requisite substantial evidence to support the Commissioner's determination (see Matter of Wegman v New York State Dept. of Health, 229 AD3d at 866; Matter of Salu v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d 1059, 1062 [3d Dept 2021], lv denied 37 NY3d 903 [2021], cert denied ___ US ___, 142 S Ct 802 [2022]).
Petitioner next asserts that the penalty imposed, consisting of revocation of its license and imposition of a monetary penalty, was too severe. We disagree. "[A]n administrative penalty must be upheld unless it is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law" (Matter of Lalima v New York State Dept. of State, 214 AD3d 1051, 1054 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Barros v John P. Picone, Inc., 188 AD3d 1397, 1400 [3d Dept 2020]). This standard has been characterized as rigorous (see Matter of Bolt v New York City Dept. of Educ., 30 NY3d 1065, 1070 [2018] [Rivera, J., concurring]). "This calculus involves consideration of whether the impact of the penalty on the [LHCSA] is so severe that it is disproportionate to the misconduct, or to the harm to the agency or the public in general" (id. [Rivera, J., concurring] [internal quotation marks and citation omitted]).Here, the Commissioner found that multiple sustained violations posed a serious and imminent danger to petitioner's patients' health,[FN5] and that petitioner's omissions, its explanation for said omissions, and the continued operation of its LHCSA after being served with a temporary order of suspension, rendered petitioner unable to continue to serve a very vulnerable segment of the state's population. As the record supports these findings, and the penalties imposed do not shock our sense of fairness, we will [*5]not disturb them (see Matter of Sunsea Energy LLC v New York State Pub. Serv. Commission, 229 AD3d 1021, 1026 [3d Dept 2024], lv denied 43 NY3d 901 [2025]; Matter of Ali v New York City Dept. of Corr., 205 AD3d 1247, 1250 [3d Dept 2022]; Matter of O'Connor v Cutting, 166 AD3d 1099, 1103 [3d Dept 2018]).We have examined petitioner's remaining contention and find it to be without merit.
Pritzker, J.P., Lynch, Fisher and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: A managed care organization is a type of healthcare delivery system that coordinates and manages healthcare services for its members. The managed care organization contracts with hospitals, physicians and LHCSAs, who provide services to their members. The managed care organization uses a network of contracted providers to make a comprehensive range of medical services available to its members.
Footnote 2: The statement of charges was amended in April 2022 and August 2022. Numerous charges related to petitioner's failure to provide and maintain appropriate patient care, including failure to provide a bill of rights and complaint procedures to the patient, failure to employ supervising medical staff (a registered nurse), failure to conduct initial and other patient assessments, failure to provide plans of care and to obtain medical orders, failure to appropriately discharge patients and to notify the patient's physician upon discharge, and failure to maintain accurate patient records (see 10 NYCRR 766.1 [a] [1], [4], [8]; 766.2 [a] [1]-[2], [8]-[9]; 766.3 [a], [b], [d]; 766.4 [a]; 766.5 [a], [b] [3]-[4]; 766.6 [a] [3], [5], [10]; 766.9 [h], [j], [o]); additional charges related to petitioner's employees, including failure to obtain and maintain personnel records, to ensure that employed aides were properly certified, to conduct proper criminal record checks of petitioner's aide employees and to ensure that aides were properly vaccinated and immunized (see 10 NYCRR 766.11 [d], [g]; 766.12 [a] [3], [c]); other charges related to petitioner's operation of its LHCSA, including failure to establish and maintain policies and procedures as required by DOH (see 10 NYCRR 403.3 [b]; 766.9 [a]-[e], [1]); and failure to comply with a suspension order (see Public Health Law § 3605-a [2]; 10 NYCRR 765-2.3 [d]).

Footnote 3: All 86 exhibits were received into evidence.
Footnote 4: The nurse who conducted the 2019 survey was no longer employed by DOH and was unavailable to testify.

Footnote 5: The Administrative Law Judge found that 19 of the sustained violations, which is slightly more than half of the 36 violations, posed a danger to petitioner's patients.